IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RODGER L. SPRINGER, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-CV-512-TLW |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Rodger L. Springer, Sr. seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.[1] [Dkt. # 8].

**Standard of Review**

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision that plaintiff was not disabled within the meaning of the Act, and whether the

---

[1] In his application, plaintiff sought both disability insurance benefits and supplemental security income. [R. 55-57, 324-329]. Plaintiff's application was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Charles Headrick was held on July 18, 2006. [R. 330]. By decision dated January 29, 2007, the ALJ entered the findings that are the subject of this appeal. [R. 21-25]. The Appeals Council denied plaintiff's request for review on August 18, 2008. [R. 4]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff limits this appeal to the denial of disability insurance benefits, in so doing, he has waived his claim for supplemental security income. This is plaintiff's third application for social security disability benefits. His first claim for Title II benefits was denied in July 2003. His second claim for Title II and Tile XVI benefits was denied in April 2004. His request for reconsideration on his second claim was denied in April 2005. [R. 58].

correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991). Even if the Court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff is a 60 year old Native American male, who was born on April 14, 1946. [R. 336]. Plaintiff has a high school education and two years of college. [R. 337]. He served in the United States Army from 1967 until 1969. [R. 338]. He has been married for 38 years to his wife, Dorothy Springer. They have three adult children and one granddaughter, all of whom reside with them. They own their own home. [R. 337]. Aside from his military service, plaintiff worked for a Chevrolet dealer for twenty-five years. When he left Chevrolet he worked in a couple of steel shops. Since 1988, he has been self employed as an auto body technician. [R. 57, 66-7, and 338].

Plaintiff's wife Dorothy has been employed almost continuously since 1967. [R. 72]. Most recently she was employed by the Cherokee Nation of Oklahoma, with annual earnings of $75,599.00. [R. 72]. Although plaintiff's wife was covered by medical insurance, she testified that she did not extend medical insurance to her husband for economic reasons because of his high blood

pressure. [R. 353]. Plaintiff first sought medical treatment on December 10, 2002, at the emergency room in the Craig County Medical Center for an outbreak of shingles. [R 249]. Prior to that date, plaintiff had never been treated by a doctor. [R 353]. The physician on call in the emergency room was Paul Battles, D.O. Dr. Battles recorded plaintiff's blood pressure as 230/130. Dr. Battles diagnosed plaintiff as "positive for hypertension, although he is not taking medication" and prescribed Lotrel and Norvasc.[2] He recorded that plaintiff has a 40-year history of smoking two packs of cigarettes per day, drinking a six pack of beer per day, plus drinking a lot of coffee. Dr. Battles diagnosed plaintiff with nicotine and alcohol abuse. [R. 135]. Plaintiff was treated by Dr. Battles on six occasions between December 12, 2002 and April 7, 2003. On his last visit, Dr. Battles recorded plaintiff's blood pressure as 150/70. [R. 133].

On May 21, 2003, plaintiff requested a "first time patient appointment" with the Veteran Hospital because he was out of blood pressure medication. [R. 172]. At that time his blood pressure reading was 158/70. [R. 172]. Larry Sumner, M.D. diagnosed plaintiff with hypertension. [R. 171]. Dr. Sumner prescribed Metoprolol and Lisinopril.[3] On August 27, 2003, plaintiff returned to the Veteran Hospital for a refill of his medication. His blood pressure reading was 168/94. The examination notes indicate plaintiff had "no complaints except occasional chronic stable back pain which he has in the morning and goes away after he gets up." [R. 169]. On October 22, 2003, plaintiff's blood pressure was 168/110. His medical records show he smoked 2 to 3 packs of cigarettes per day. He was advised that if he quit smoking he would lower his risk of heart attack,

---

[2] These medication are prescribed for the treatment of hypertension. The explanation and use of the medications herein was obtained online at www.drugs.com.

[3] These medication are prescribed for the treatment of hypertension.

3

stroke or cancer. Plaintiff refused to participate in a smoking cessation class. His alcohol screening test was positive, and he ate without regard to the fat or calorie count in his food. [R. 160, 166-67]. On December 23, 2003, plaintiff returned to the Veteran Hospital to refill his blood pressure medication, indicating that he had been without the medication for three weeks. [R. 157]. His blood pressure reading was 190/100. He was again advised to stop smoking, limit alcohol, eat fruits and vegetables and to exercise each day. Plaintiff again declined to attend a smoking cessation class. Plaintiff had no complaints of discomfort, blurred vision, headaches or dizziness. [R. 157]. On February 23, 2004, plaintiff returned to refill his medications. His blood pressure reading was 140/80. [R. 153]. His physician noted that he was "alert and oriented" and he denied any complaints of discomfort. [R. 153]. Plaintiff's next visit to the Veteran Hospital was on June 29, 2004 for a medication refill. At that time his blood pressure reading was 141/81. Plaintiff denied having any medical complaints except for hypertension. [R. 148].[4]

The content of plaintiff's medical records changed as of September 2, 2004. On that date, plaintiff was seen at the Veteran Hospital with complaints that his right leg "doesn't work like it should," but he denied any pain, redness or swelling. [R. 227]. He noted weakness in his right leg "beginning suddenly this a.m." He denied having a headache, visual disturbance, or paresthesias.[5] He complained of marked back pain especially with prolonged standing. [R. 225]. Four days later

---

[4] On October 27, 2004, an MRI of plaintiff's heart showed "mild atheromatous plaque otherwise negative." [R. 244]. On September 15, 2004, an EKG of plaintiff's heart showed "a mild degree of concentric left ventricular hypertrophy." [R. 235].

[5] "Paresthesia" is medical terminology for an abnormal sensation of the skin, such as numbness, tingling, pricking, burning, or creeping on the skin that has no objective cause. All medical definitions provided herein are obtained from the internet at www.medterms.com.

plaintiff returned to the Veteran Hospital. His chief complaint was weakness on the right side of his body. Plaintiff's wife thought her husband had a CVA.[6] [R. 224]. Plaintiff's blood pressure was 186/102. The examination notes state that plaintiff was last seen four days prior with complaints of low back pain. But that he arrived "hypertensive today." He was weak on his right side, and his hand grips were weak. He had stopped drinking beer four days earlier because he was afraid to drink alcohol with his medication. His memory was vague. [R. 224]. He was instructed to "pick up a wheel chair" the next day. [R. 221]. Plaintiff returned to the Veteran Hospital on September 13, 2004, complaining of an episode where he "quit breathing," "turned grey," "arched his back," "eye[s] rolled back into his head" and "weakness in the right side of his leg," right foot weakness, inability to bear weight on his right leg, difficulty urinating and experiencing "syncope."[7] His blood pressure reading was 175/95. [R. 217-20].[8] On October 14, 2004, he requested a walker because he grew tired when walking a long distance. He also complained of having cold feet multiple times. His blood pressure was 140/79 [R. 207]. On April 7, 2005, plaintiff had a CT brain scan, which showed right side paresis.[9] [R. 197].

Plaintiff filed his application for social security benefits on February 17, 2004, claiming disability since November 16, 1998, due to hearing loss, leg and back problems, high blood pressure

---

[6] A "CVA" is the abbreviation for cerebrovascular accident, which is the medical term for stroke.

[7] "Syncope" is medical terminology for a partial or complete loss of consciousness with interruption of awareness of oneself and ones surroundings.

[8] On September 6, 2004, a ct scan on plaintiff's head showed "no intracranial bleed and no old infarct." This indicates there was no collection of blood and no dead tissue within his skull.

[9] "Paresis" is the medical terminology for incomplete paralysis.

and chronic obstructive pulmonary disease. [R. 79, 85, 334]. He said he could not work because his "old joints don't want to move" and at job interviews he is told he is "too old" to work. [R. 98].

In assessing plaintiff's qualification for disability benefits, the ALJ found at step one that plaintiff has not engaged in any substantial gainful activity during the period from his alleged onset date of November 26, 1998, through his date last insured on June 30, 2003. [R. 23]. At step two, the ALJ determined that through the date last insured, plaintiff's medically determinable impairment was hypertension. [R. 23]. He also found that through the date last insured, plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months; therefore, plaintiff did not have a severe impairment or combination of impairments. [R. 23]. Thus, he was not eligible for disability benefits. [R. 25]. The ALJ denied plaintiff's application at step two of the five step evaluation process. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[10] The ALJ concluded that plaintiff had no impairment other than hypertension prior to June 30, 2003.

**Issues**

Plaintiff raises four issues on appeal:

1. Whether the ALJ erred in failing to call a medical expert to testify as to the date of plaintiff's stroke and disability onset date, claiming these dates are ambiguous in the record.

2. Whether it was error to deny plaintiff's claim at step two.

---

[10] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents him from engaging in his past employment, and (5) has an impairment which prevents him from engaging in any other work, considering his age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) citing Williams v. Bowen, 844 F.2d at 750-52.

      3.      Whether the ALJ erred in failing to find that plaintiff had a stroke.

      4.      Whether the ALJ erred in failing to acknowledge that an agency consultant determined that plaintiff met the Listing currently but failed to find that the date of plaintiff's stroke was ambiguous.

[Dkt. #14 at 2].

## The Relevant Insured Period

Plaintiff's insured status is from his onset date of November 26, 1998, through the date he was last insured on June 30, 2003. Thus, to be entitled to disability benefits, plaintiff had the burden to prove that he was totally disabled on or before June 30, 2003. See, Kepler v. Chater, 68 F.3d 387, 389 (10th Cir. 1995). It is undisputed that June 30, 2003 is the termination date for plaintiff's insured status.

## Discussion

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423 (d)(5); 20 C.F.R. § 404.1512(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). As stated above, to meet this burden plaintiff must provide medical evidence of an impairment and the severity of his impairment during the relevant insured period.[11] 20 C.F.R. § 404.1512(b).

---

[11] Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. § 404.1508. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. § 404.1513(a).

As his first assignment of error, plaintiff contends the ALJ erred by failing to call a medical expert to testify at the hearing because, allegedly, plaintiff's medical records were ambiguous as to the onset date of plaintiff's disabling stroke. To establish an ambiguity, plaintiff relies on a notation shown on a Medical Consultant Review Form dated January 10, 2005. The form is initialed, but unsigned. [R. 195]. The form indicates that plaintiff met or equaled the requirements of Listing of Impairment 11.04B for strokes on January 10, 2005,[12] and his status was non-severe on June 30, 2003, his date last insured. Although this statement is clear and unambiguous, plaintiff claims the ambiguity results from a second notation. This notation references the onset date for supplemental security income benefits and questions whether plaintiff's stroke occurred in July 2004. [R. 195].

Plaintiff's argument lacks merit. The ALJ determined that plaintiff did not have an impairment or combination of impairments that limited his ability to work prior to June 30, 2003. The ALJ denied plaintiff's claim for disability as to his back, hips, legs and feet. Plaintiff does not challenge this determination. Plaintiff also claimed disability due to hypertension. The ALJ found that plaintiff's hypertension did not limit his ability to work as of June 30, 2003. He stated:

> The record reflects that the claimant and his wife presented to Paul Battles, D.O., for treatment of shingles in December 2002. Dr. Battles also treated the claimant for hypertension from December 2002 through April 2003, but the record does not show that the claimant's increased blood pressure levels resulted in any significant limitation of the claimant's activities. The claimant's hypertension improved with treatment, and the record shows that Dr. Battles placed no restrictions or limitations on the claimant's activities during this period although he encouraged the claimant to cut back on cigarette

---

[12] A claimant meets the requirements of listing 11.04B for "central nervous system vascular accident" or stroke and is considered disabled if claimant had a stroke and more than 3 months afterwards claimant has significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and strain. See, 20 C.F.R. pt. 404, subpt B, App. 1.

> use (Exhibit 1F). Further, the record reflects that none of the claimant's treating or examining physicians placed any limitations or restrictions on the claimant's activities prior to June 30, 2003.

[R. 24]. The only evidence of a stroke prior to June 30, 2003, is the subjective post hoc testimony of his wife, Dorothy Springer. The ALJ disregarded her statement as not credible, unsubstantiated and contradicted by medical records. He stated:

> Mrs. Springer testified that she took the claimant to the VA in May 2003 to get blood pressure pills and to have the claimant evaluated for mini strokes. She thought that the claimant looked pale, ashen and disoriented, but these findings are absent from the VA records (Exhibit 3F). Mrs. Springer stated that she tried to accompany the claimant to the examination room but she was not allowed to go with him.
>
> A review of the claimant's VA records reflects the claimant was seen on May 21, 2003 to establish care and obtain blood pressure medication. The claimant reported that he smoked cigarettes and was on an unrestricted diet. He was noted to be awake, alert, oriented and appropriate with no complaints. His blood pressure was recorded as 158/70 and the remainder of the examination was essentially normal. Hydrochlorothiazide (HCTZ), Metoprolol and Lisinopril were prescribed for hypertension (Exhibit 3F, pages 26-27).

[R. 25]. The ALJ's findings are supported by substantial evidence of record. Plaintiff's medical records clearly show that plaintiff experienced a stroke on or about September 2, 2004, when he reported symptoms consistent with a stroke. A notation by an unidentified consultative examiner questioning whether the onset date of plaintiff's disability occurred July 2004, is not an ambiguity in the record. The same examiner noted that the date last insured was June 30, 2003 and as of that termination date, plaintiff's status was non severe. Thus, the ALJ did not err in failing to call a medical expert to testify at the hearing. The regulations recognize that an ALJ sometimes may call a medical advisor to infer a disability onset date. See Social Security Ruling 83-20, 1983 WL 31249. "However, a medical advisor need be called only if the medical evidence of onset is ambiguous."

Adams v. Apfel, 162 F.3d 1172 (10th Cir. 1998) (unpublished).[13] When the record is unambiguous, there is no need for an expert's testimony. As in Adams, "[t]he medical evidence established that plaintiff could perform work through the date of expiration of his insured status. We conclude the ALJ did not err in failing to call a medical advisor." Id. The Court finds that this same conclusion is supported by substantial evidence in this case.

The focus of plaintiff's first claim is his contention that the onset date of plaintiff's disability is ambiguous and undetermined. Social Security Ruling 83-20 defines an onset date as "the first day an individual is disabled as defined in the Act and the regulations." Id. "Factors relevant to the determination are the claimant's allegation of an onset date, his work history, and the medical evidence, with medical evidence being the primary element in determining onset date." Adame v. Apel, 4 Fed. Appx. 730 (10th Cir. 2001) (unpublished) (citing Reid v. Chater, 71 F.3d 372, 373 (10th Cir. 1995)). The fact that an onset date is left undetermined is not grounds for reversal. In Adame the court said, "[A] medical advisor need be called only if the medical evidence of onset is ambiguous. Here, the medical evidence is not ambiguous, it is just nonexistent." Id. The court held it would be futile to request a medical advisor to review evidence and render a retroactive opinion based on nothing more than an inference, because even if the inference were accepted as true, it would not answer the question of whether the claimant was disabled prior to the date last insured, since the evidence indicates that plaintiff was not impaired prior to the expiration of his insured status.

Plaintiff's second assignment of error is a restatement of his first. Plaintiff contends the ALJ

---

[13] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

erred in denying his claim at step two, because plaintiff met the listing requirement for a stroke on January 10, 2005, and the date of plaintiff's stroke was questioned by the consultative examiner. Plaintiff contends that at step two only "*de minimis*" evidence is required to show his impairment would impact his ability to work and the examiner's query satisfied that minimum threshold.

The Court finds no merit to this argument, because the ALJ's finding that plaintiff could perform work-related activity as of June 30, 2003, is supported by substantial evidence of record. The fact that plaintiff had a stroke the following year does not establish that he was unable to work in June 2003. Plaintiff failed to present any credible evidence that plaintiff's hypertension was disabling as of June 30, 2003.

The question this case presents is not whether plaintiff is totally disabled and unable to work, but whether the ALJ erred in finding that plaintiff was not disabled and unable to work prior to June 30, 2003. Aside from the testimony of his wife, the record contains no evidence that plaintiff was experiencing any symptoms of a stroke prior to June 30, 2003. The ALJ found:

> The undersigned has carefully considered all of the evidence of record, including the testimony provided at the hearing, and must conclude that the claimant was not disabled at any time prior to June 30, 2003, the date his insured status expired. The undersigned has specifically considered the testimony of Mrs. Springer regarding the claimant's condition. Unfortunately, the record does not substantiate Mrs. Springer's statements regarding the claimant's reported right-sided weakness and memory problems. In view of the entire evidence, the undersigned must find that the claimant did not have a severe impairment that significantly interfered with his ability to perform work-related activities at any time prior to June 30, 2003.

[R. 25]. The consultative examiner's inquiry regarding whether plaintiff's stroke occurred in June 2004, raises no issue relevant to plaintiff's ability to work prior to June 30, 2003. Plaintiff's bare allegation is without supporting evidence and is, therefore, insufficient.

11

As his third issue of error, plaintiff contends that the ALJ erred in finding that plaintiff's medical problem was hypertension and failing to acknowledge that plaintiff had a stroke. Plaintiff contends that the ALJ's failure to do so violates Carpenter v. Astrue, 537 F.3d 1264 (10th Cir. 2008). Relying on Carpenter, plaintiff claims that the fact he had a stroke is favorable evidence that should have been acknowledged by the ALJ. The Court disagrees.

Plaintiff fails to cite any evidence to show that his 2004 stroke involved a progressive condition. Rather, the evidence is that in September 2004, plaintiff experienced a distinct and immediate medical event, a stroke, with disabling impact, followed by frequent return visits to treat the symptoms of his stroke. All this activity occurred well after June 30, 2003. There is no evidence that plaintiff sought treatment for a stroke prior to June 30, 2003. The notation by the consultative examiner that plaintiff's stroke may have occurred in June 2004, does not aid plaintiff's contention because that date is one year beyond the termination of plaintiff's insured status. Thus, the ALJ did not error in failing to address plaintiff's disability which occurred outside the adjudicated period, November 26, 1998 through June 30, 2003. The Tenth Circuit instructs, "While we agree with claimant that retrospective diagnosis and subjective testimony can be used to diagnose a physical or mental condition, this type of evidence alone cannot justify an award of benefits." Flint v. Sullivan, 951 F.2d 264, 267 (10th Cir. 1991) (unpublished) (emphasis added). The court held:

> [W]e recently addressed an application for disability benefits by a claimant suffering from multiple sclerosis which was diagnosed four years after her insured status expired. We affirmed the Secretary's denial of benefits even though the claimant introduced numerous retrospective opinions diagnosing her disease. We stated that 'the relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status. A retrospective diagnosis without evidence of actual disability is insufficient.'

Id. (emphasis in text). As previously stated, the ALJ's findings that plaintiff had non-severe

hypertension during the adjudicated period is supported by substantial evidence. There is no error in the ALJ's purported failure to address plaintiff's disability, which occurred after termination of his insured status. There is no evidence that plaintiff was disabled prior to June 30, 2003. In Flint, the Tenth Circuit agreed with the Commissioner's finding that "while the onset of the claimant's impairments may be traceable to events which occurred during a period of coverage, there is no evidence to suggest that the claimant experienced disabling effects of these impairments during the relevant period." Id. at 268. The court concluded, "again it must be stated that the issue is the existence of a disability at a particular time and not the identification of a cause." Id.

As a final argument, plaintiff claims that it was error for the ALJ to omit the consultative examiner's notation that plaintiff met the Listing for stroke without a determination by the ALJ of a definitive date the stoke occurred. Once again, plaintiff's reliance on June 2004 as a possible date that his stroke occurred is no evidence that plaintiff's stroke occurred prior to June 2003. In essence, plaintiff contends the absence of evidence should be construed as evidence in his favor. As shown above, this argument, standing alone, lacks merit.

## Conclusion

Based on the foregoing, the Court AFFIRMS the decision of the Commission denying disability benefits to plaintiff.

IT IS SO ORDERED this 18th day of March, 2010.

T. Lane Wilson
United States Magistrate Judge